UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT K. BECKER,

        Petitioner,

                                         CASE NO. 11-12382
v.                                      HONORABLE VICTORIA A. ROBERTS

ROBERT NAPEL,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE HABEAS CORPUS PETITION,
DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY, BUT
<u>GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

On June 1, 2011, petitioner Robert K. Becker filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's convictions for assault with intent to commit murder, escape, resisting and obstructing a police officer, and two firearm offenses.  Petitioner is serving sentences ranging from thirteen months to two years for the resisting-and-obstructing conviction, to twenty-one to thirty-five years for the assault conviction.  He alleges that (1) the trial judge was biased, (2) the trial judge deprived him of due process by not reading instructions on the elements of the crimes to the jury, and (3) there is no reviewable record of the jury instructions on the elements of the crimes.

Respondent Robert Napel urges the Court through counsel to deny the petition because Petitioner waived or procedurally defaulted all three of his claims.

Having read the pleadings and record, the Court agrees that Petitioner is not entitled to relief; the Court denies the petition.

## I. BACKGROUND

This case arose from an incident that occurred on June 27, 2007, at the
Montmorency County courthouse where a jury found Petitioner guilty of criminal sexual
conduct.  After the trial judge announced that he was remanding Petitioner to custody
pending the sentencing, Petitioner bolted from the courtroom and ran to his car in the
parking lot of the courthouse.  Detective Todd Heller and court bailiff Chad Brown
pursued Petitioner to his car.  Petitioner opened a car door, removed a shotgun, and
aimed the gun at Detective Heller's chest.  Petitioner pulled the trigger of the shotgun,
according to Detective Heller, but the gun merely clicked and did not discharge a bullet.
Detective Heller and bailiff Chad Brown grabbed Petitioner, took him to the ground, and
handcuffed him.

Petitioner went to trial in Montmorency County Circuit Court on charges that he:
assaulted Detective Heller with intent to commit murder, Mich. Comp. Laws § 750.83;
possessed a firearm during the commission of a felony (felony firearm), Mich. Comp.
Laws § 750.227b; escaped while awaiting sentence for a felony, Mich. Comp. Laws §
750.197(2); possessed a firearm while ineligible to do so because he was a felon, Mich.
Comp. Laws § 750.224f; and, resisted and obstructed a police officer, Mich. Comp.
Laws § 750.81d(1).  The same judge who presided over Petitioner's trial on criminal
sexual conduct charges presided over his jury trial on the assault, escape, resisting and
obstructing, and firearm charges.

Petitioner did not testify or present witnesses.  During closing arguments,
defense counsel conceded that Petitioner was guilty of all but the most serious charge,

2

assault with intent to commit murder.  On that charge, defense counsel argued that Petitioner was guilty of the lesser-included offense of assault with a dangerous weapon. On December 13, 2007, the jury found Petitioner guilty on all charges.

Petitioner raised his habeas claims in an appeal of right and then moved to remand his case to the trial court to settle the record on the content of the written jury instructions that were handed to the jury but not read to them.  The Michigan Court of Appeals granted Petitioner's request for a remand, but retained jurisdiction.

On remand, the trial judge's successor held an evidentiary hearing which included testimony from the judge who presided over Petitioner's trial, the judge's secretary, the prosecutor at Petitioner's trial, and Petitioner's trial attorney.  Following the remand, Petitioner filed a supplemental appellate brief in which he argued that his conviction should be reversed because the parties were unable to settle the record. The Michigan Court of Appeals determined that the record was sufficiently settled and then affirmed Petitioner's convictions in an unpublished, *per curiam* decision. *See People v. Becker*, No. 283573, 2009 WL 5194986 (Mich. Ct. App. Dec. 15, 2009).  On May 25, 2010, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *See People v. Becker*, 486 Mich. 929; 781 N.W.2d 822 (2010) (table).

Petitioner then filed his *pro se* habeas corpus petition, claiming that:  (1) the trial judge should have recused himself because he was biased as a result of being a witness to one or more of the charged offenses; (2) the trial judge deprived him of due process by failing to read aloud the jury instructions on the elements of the crimes, and trial counsel was ineffective for agreeing to the procedure; and (3) there is not a

3

reviewable record of the jury instructions on the elements of the crimes, and the record

could not be settled successfully on remand.  To support these claims, Petitioner

incorporates by reference his brief in the Michigan Supreme Court on direct appeal from

his convictions.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for

persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*,

__ U.S. __, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the Court may not

grant a state prisoner's application for the writ of habeas corpus unless the state court's

adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law,
>         as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented
>         in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court
> may grant the writ if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application"
> clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for

Part II).  "[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v. Lett*, 559  U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.*  (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

5

### III.  DISCUSSION

**A.  Judicial Bias**

Petitioner alleges that the trial judge should have disqualified himself from presiding over Petitioner's case because he was biased as a result of being a witness to the counts charging Petitioner with escape and resisting and obstructing a police officer. Petitioner admits that he did not preserve this issue for review, but he contends that the circumstances warranted *sua sponte* disqualification because the possibility of actual bias was too high to be constitutionally tolerated.  Respondent argues that this claim is procedurally defaulted due to Petitioner's failure to raise the issue in the trial court.

**1.  Procedural Default**

A procedural default is "a critical failure to comply with state procedural law." *Trest v. Cain*, 522 U.S. 87, 89 (1997).  The doctrine of procedural default prohibits a federal court from reviewing the merits of a habeas petitioner's claims, including constitutional claims, if a state court declined to hear the claims because the prisoner failed to abide by a state procedural rule.  *Martinez v. Ryan*, __ U.S. __, __, 132 S. Ct. 1309, 1316 (2012).  On habeas review, a prisoner may obtain relief on a procedurally defaulted claim only if he or she "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

> [I]n the Sixth Circuit, "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met:  (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and

6

independent state ground for denying review of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default."   [*Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011), *cert. denied*, __ U.S. __, 133 S. Ct. 107 (2012)].   To determine whether a state procedural rule was applied to bar a habeas claim, [courts] look "to the last reasoned state court-decision disposing of the claim."  *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*).

*Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013).

### a. The First Three Factors

The relevant state procedural rule in this case is Michigan Court Rule 2.003(D) (formerly Mich. Ct. R. 2.003(C)), which requires a party to file a motion to disqualify a trial court judge within fourteen days after discovering the ground for disqualification. Petitioner violated this rule by not moving to disqualify the trial judge.  The first element of procedural default is satisfied.

The second element of procedural default (enforcement of a state procedural rule) is also satisfied.  The Michigan Court of Appeals was the last state court to review Petitioner's claim on the merits; it deemed the claim waived because Petitioner did not move for judicial disqualification despite being fully aware of the grounds for disqualification long before trial.

The third element of procedural default requires a determination of whether the state procedural rule was an adequate and independent state ground for denying review of a federal constitutional claim.  "The adequacy of a state procedural bar turns on whether it is firmly established and regularly followed; a state rule is independent if the state court actually relies on it to preclude a merits review."  *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005) (citing *Abela v. Martin*, 380 F.3d 915, 921 (6th Cir. 2004)).

 Rule 2.003(D) was firmly established and regularly followed before Petitioner's trial in

7

2007.  *See, e.g., Cain v. Michigan Dep't Corr.,* 451 Mich. 470, 494; 548 N.W.2d 210,

221 (1996) (applying the Michigan disqualification law in 1996).  And because the

Michigan Court of Appeals actually relied on the rule, the rule is an adequate and

independent state ground to foreclose review of Petitioner's constitutional claim.

To summarize, the first three elements of procedural default are satisfied:

Petitioner violated a relevant state procedural rule, the last state court to review his

claim in a reasoned opinion enforced the rule, and the rule is an adequate and

independent state ground to foreclose review of the federal claim.  "[F]ederal habeas

review of [Petitioner's] claim[] is barred unless [he] can demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider [his] claim[] will result in a fundamental miscarriage

of justice."  *Coleman v. Thompson*, 501 U.S. at 750.

### b.  Cause and Prejudice; Miscarriage of Justice

Petitioner alleges in a reply brief that his trial attorney could not have known of

the trial judge's bias before trial.  *See* Reply Brief at 8.  However, as the Michigan Court

of Appeals recognized, Petitioner knew of the grounds for disqualification months before

his trial began.  His attorney stated at the circuit court arraignment that he was

considering whether to file a motion regarding the fact that the trial judge witnessed

Petitioner's escape from the courtroom during the prior trial.  (Arraignment Hr'g, 4-5,

Aug. 2, 2007.) The Court concludes from trial counsel's awareness of the issue that

Petitioner has not established "cause" for his procedural default of failing to file a motion

for disqualification of the trial judge.

Because Petitioner fails to argue any other "cause" for his default, the Court need

not decide whether Petitioner has shown prejudice from the alleged violation of federal law. *Tolliver v. Sheets*, 594 F.3d 900, 930 n.13 (6th Cir. 2010). "In the absence of cause and prejudice, a petitioner may demonstrate that the failure to consider [his claim] will result in a fundamental miscarriage of justice. A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

At trial, Petitioner conceded guilt on four of the five charges against him[1], and there was substantial evidence that he was guilty of the remaining claim, which was assault with intent to commit murder. The evidence at trial established that he retrieved a 20-gauge shotgun from his vehicle, pointed it at the officer who was pursuing him,

---

[1] Defense counsel stated to the jury during closing arguments:

You've got a monumental task, okay, as it relates to the first charge in this matter. As it relates to the other charges, I'm going to make it easy for you, okay; there's no dispute on the other charges. Okay? No dispute. Mr. Becker got up and ran out of the courtroom and ran to his car and got a weapon. Okay. He escaped from a place of legal confinement, this courthouse. The Judge instructed him that he was remanded to the Sheriff's custody. He resisted Deputy Chad Brown as Chad was running after him, yelling at him, "Stop, stop." He was running away. That's enough for resisting, okay? He committed a felony, he had the gun in his hand.

The only possible one that there may have been a defense to was the felon in possession of a firearm. However, we've agreed that he was convicted of a felony upon the jury announcing their verdict.

. . . . The law says when you're convicted of a felony, you're ineligible to possess a firearm. Okay.

So those charges, they're done; they're easy. We're asking you to find him guilty on those, as well, because he's guilty of them.

(Trial Tr. Vol. III, 520-21, Dec. 13, 2007.)

9

and, according to the officer, pulled the trigger.  As Petitioner has not submitted any

new evidence of actual innocence, a miscarriage of justice will not occur if the Court

fails to address Petitioner's first claim on the merits.  The claim is procedurally

defaulted.

### 2.  On the Merits

Even if Petitioner's claim were not procedurally defaulted, it lacks merit because

Petitioner has not shown that the trial judge was biased.  The United States Court of

Appeals for the Sixth Circuit recently explained that

> [j]udicial bias is a deep-seated favoritism or antagonism that makes fair
> judgment impossible.  See *Mayberry v. Pennsylvania*, 400 U.S. 455,
> 465–66, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971).  A biased decision-maker is
> constitutionally unacceptable.  *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct.
> 1456, 43 L.Ed.2d 712 (1975).  "[T]he Due Process Clause clearly requires
> a fair trial in a fair tribunal before a judge with no actual bias against the
> defendant or interest in the outcome of his particular case." *Bracy v.
> Bramley*, 520 U.S. 899, 904–05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997)
> (internal quotation marks and citation omitted); *Tummy v. Ohio*,  273 U.S.
> 510, 535, 47 S.Ct. 437, 71 L.Ed. 749 (1927).
>
> The bias inquiry is objective, asking "whether the average judge in
> his position is likely to be neutral, or whether there is an unconstitutional
> potential for bias." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 872,
> 881, 129 S.Ct. 2252, 173 L. Ed. 2d 1208 (2009) (internal quotation marks
> omitted) (citing *Ungar v. Sarafite*, 376 U.S. 575, 584, 84 S. Ct. 841, 11 L.
> Ed. 2d 921 (1964)).  Recusal is required when "the probability of actual
> bias rises to an unconstitutional level." *Id.* at 887, 129 S. Ct. 2252 . . . .
>
> . . . .  To establish bias, [a petitioner] need not prove actual bias, but
> merely an unconstitutionally high probability of actual bias.  *Caperton*, 556
> U.S. at 887, 129 S. Ct. 2252.

*Coley v. Bagley*, 706 F.3d 741, 750 (6th Cir.), *cert. denied*, __ S. Ct. __, No. 13-5005,

2013 WL 3283524 (U.S. Nov. 24, 2013).

The trial judge in Petitioner's case was not the trier of fact, and he apparently

10

observed only Petitioner's escape from the courtroom at the conclusion of Petitioner's prior trial. Petitioner conceded guilt on the escape charge, as well as, the firearm and obstructing and resisting charges. *See supra*, note 1. The only charge on which he did not concede guilt was assault with intent to commit murder, and the facts giving rise to that claim occurred outside the judge's presence.

Furthermore, a trial court's

"[e]xposure to bad facts about the defendant does not, as a per se matter, establish bias. *See Esparza v. Mitchell*, 310 F.3d 414, 424–25 (6th Cir.2002), *rev'd on other grounds*, 540 U.S. 12, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003). "The nature of the criminal justice system often requires judges to consider evidence and then dismiss it from their minds." *Id.* at 425. Even exposure to bad facts and formation of an opinion based on them are not enough to establish bias. *See Liteky v. United States,* 510 U.S. 540, 550–51, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). Nor does the analysis change merely because the judge received the information in a pretrial proceeding. *Id.* at 551, 114 S. Ct. 1147.

*Id.* at 750.

The Court concludes for the foregoing reasons that Petitioner has not established actual bias, nor an unconstitutionally high probability of actual bias. Petitioner's claim lacks merit in addition to being procedurally defaulted.

11

**B.  The Jury Instructions and Trial Counsel**

   **1.  Failure to Read the Entire Charge to the Jury**

   The second habeas claim alleges that the trial judge deprived Petitioner of due process by failing to read a portion of the jury instructions to the jury.  The trial judge read the standard jury instructions to the jury, but he did not read the instructions on the elements of the charges and the lesser-included offenses for assault with intent to commit murder.  Instead, after receiving permission from both the prosecutor and defense counsel, the judge submitted the jury instructions on the elements of the charges and the lesser-included offenses to the jury in writing without reading them in open court.

   The Michigan Court of Appeals decided on review of Petitioner's claim that Petitioner waived review of the issue by "affirmatively agree[ing] with the trial court's proposed procedure of reading the general instructions and providing separate pieces of paper to the jury that set forth the elements of each crime."  *Becker*, 2009 WL 5194986, at *2.

   "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  "An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course."  *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990).

   The trial judge in Petitioner's case orally instructed the jury on the standard jury instructions, but when it came to the instructions on the elements of the offenses, the judge declined to read the instructions aloud.  Instead, the judge informed the jurors that

12

there were five charges for them to consider and that he was giving them sheets of paper containing the elements of each of the offenses.  The trial judge then said:

> I'm going to ask the attorneys now – I've already showed you these elements.  I'm going to pass them in to the jury.  Can we waive the reading of them specifically at this time?

Defense counsel answered, "I don't have any objection, Your Honor," and the prosecutor said, "Yes, Your Honor."  The trial judge replied, "Okay.  Then we are going to do that."  (Trial Tr. Vol. III, 543-44, Dec. 13, 2007.)

The judge subsequently read the five charges aloud and explained that only the first charge (assault with intent to commit murder) had two lesser-included offenses. The court explained that the elements of all the offenses and the lesser-included offenses were set forth on papers that the court was handing to the jurors.  (*Id*. at 544-45.)  Defense counsel raised no objection to this procedure and, in fact, expressly agreed to the procedure.  Thus, the issue concerning the submission of certain written instructions to the jury in lieu of an oral reading of the instructions is waived.

### 2.  Alleged Ineffective Assistance of Counsel

Petitioner alleges that his trial attorney was ineffective for agreeing to the trial judge's suggestion to forego reading the jury instructions on the elements of the crimes to the jury.  Although Petitioner contends that there was no strategic reason for agreeing to the procedure, the Michigan Court of Appeals disagreed and concluded that Petitioner had not overcome the strong presumption that defense counsel's agreement with the suggested procedure was sound trial strategy.

### a.  Clearly Established Federal Law

The Constitution "does not guarantee the right to perfect counsel; it promises

13

only the right to effective assistance . . . ." *Burt v. Titlow*, __ S. Ct. __, __, No. 12-414,

2013 WL 5904117, at *7 (U.S. Nov. 5, 2013).  To prevail on his claim, Petitioner must

show that his attorney's performance was deficient and that the deficient performance

prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hodges v.

Colson*, 727  F.3d 517, 541-42` (6th  Cir. 2013).  An attorney's performance is deficient

if "in light of all the circumstances, the identified acts and omissions were outside the

wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S.

at 690.  "This requires showing that counsel made errors so serious that counsel was

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

at 687.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at

689.  And, because of the difficulties inherent in evaluating counsel's conduct from his

or her perspective at the time, "a court must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.' " *Id.* (quoting *Michel v.

Louisiana*, 350 U.S. 91, 101 (1955)).

       To satisfy the prejudice prong of the *Strickland* test, Petitioner must demonstrate

"a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* at 694.  "This does not require a

showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he

likelihood of a different result must be substantial, not just conceivable." *Harrington v.

Richter*, 131 S. Ct. at 792 (quoting *Strickland v. Washington*, 466 U.S. at 693).

14

### b. Application

State judges in Michigan are required to instruct juries on the law, but the court rules do not require judges to read instructions to the jury. *See* Mich. Ct. R. 2.512(B)(2)("Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable law, the issues presented by the case, and, if a party requests . . . , that party's theory of the case."). And in *Haupt v. United States*, 330 U.S. 631, 643 (1947), the Supreme Court stated that allowing the jury to have a typewritten copy of the court's charge did not warrant an inference of unfairness or irregularity in the trial. A trial court's decision to provide the jury with written instructions on only the substantive counts is a proper exercise of the court's discretion. *United States v. Henry*, 878 F.2d 937, 940 (6th Cir. 1989), *overruled on other grounds* by *Bailey v. United States*, 516 U.S. 137 (1995).

The trial judge, moreover, afforded Petitioner's trial attorney an opportunity to review the written jury instructions on the elements of the crimes before the trial judge handed the instructions to the jury. When the trial judge asked the attorneys whether they had a problem with the instructions, the prosecutor responded, "No," and defense counsel said, "I'm satisfied, Your Honor." (Trial Tr. Vol. III, 551-52, Dec. 13, 2007.)

Because neither attorney claimed that the written instructions were defective, and because submitting written instructions to the jury was not prohibited by the court rules, defense counsel's acquiescence in the trial judge's procedure did not amount to deficient performance. The written instructions may have aided the jury's understanding of the elements of the crimes and the lesser-included offenses in a way that an oral reading of the instructions would not have done. In fact,

15

> ordinarily, providing jurors with written instructions actually favors the defendant(s).  Written instructions enable each juror, during deliberations, to focus on every essential element as to which the government bears the burden of proof beyond a reasonable doubt.  That practice tends to increase the likelihood that, should the jury return a guilty verdict, it is firmly based on the applicable law, rather than on some vague memory of lengthy oral instructions, or on a general sense of the defendant's guilt or innocence or, even worse, based simply on a generalized feeling about the defendant's character.

*McGonagle v. United States*, Nos. Civ. 02-73-M, Civ. 02-75-M, Civ. 02-84-M, Civ. 02-88-M, Civ. 02-90-M, 2002 WL 31409820, at *4 (D. N.H. Oct. 23, 2002) (unpublished).

Thus, Petitioner's ineffective-assistance-of-counsel claim fails.

## C.  The Alleged Lack of a Reviewable Record

In his third and final claim, Petitioner alleges that his constitutional rights to due process and equal protection of the law were violated because there is no reviewable record of the state court's jury instructions on the elements of the charged offenses.  As noted above, the trial court submitted those instructions to the jury in writing without reading them to the jury on the record; there is no transcript of instructions on the elements of the crimes.  Further, the written instructions were not placed in the state court file.  Petitioner states that not only has he been unable to get a copy of the written instructions, the record could not be settled successfully on remand to the state trial court.  He contends that the lack of a record on the jury instructions addressing the elements of the offenses makes it impossible to determine whether the jury was properly instructed.

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and rejected it.  The Court of Appeals summarized the testimony at the state evidentiary hearing on this issue and concluded that the record was sufficiently settled to allow

16

evaluation of Petitioner's claims on appeal.

At least three federal circuit courts of appeal have determined that a trial court must read aloud its instructions to the jury.  *See United States v. Perry*, 479 F.3d 885, 892 (D.C. Cir. 2007); *Guam v. Marquez*, 963 F.2d 1311, 1314-16 (9th Cir. 1992); *United States v. Noble*, 155 F.2d 315, 318 (3d Cir. 1946).  The reasons given for requiring oral jury instructions are (1) to enable the defendant to object if the instructions are incorrect and to "secure their prompt correction by the trial judge" and (2) to ensure "that each member of the jury has actually received the instructions."  *Noble*, 155 F.2d at 318.

Both parties approved of the written jury instructions, and there is no reason to believe that the trial judge did not provide them to the jury.  After conferring with the attorneys, the trial judge stated that he was going to pass the instructions on the charges to the jury.  (Trial Tr. Vol. III, 551-52, Dec. 13, 2007.)

More importantly, the Court has found no Supreme Court decision requiring state courts to read all instructions aloud to jurors, or to include written jury instructions in the case file.  The Supreme Court determined in *Mayer v. Chicago*, 404 U.S. 189, 194 (1971), that States "must afford the indigent a 'record of sufficient completeness' to permit proper consideration of (his) claims."  But "[a]lternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise."  *Draper v. Washington*, 372 U.S. 487, 495 (1963).  Where a portion of the record is missing and unobtainable, a habeas petitioner must show prejudice.  *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002).

An alternative method of reporting on the trial proceedings occurred.  The trial

17

court held an evidentiary hearing where Petitioner's

> trial counsel testified that he found a set of jury instructions, in his
> file on [Petitioner's] case, with his own handwritten notes on them.
> Counsel recalled looking at the instructions and reviewing them with the
> trial judge and the prosecutor, and agreeing that they could be submitted
> to the jury, but could not confirm that they were actually sent to the jury.
> Counsel testified that he assumed the written instructions were provided to
> the jury, but did not independently recall them actually being handed to the
> jury.
>
> The prosecutor testified that she believed, with 90-95% certainty,
> that the instructions found in defense counsel's file were those that were
> provided to the jury (with the exception of one instruction containing
> defense counsel's notes). The prosecutor specifically recalled going over
> the elements of the charged crimes with the trial judge and defense
> counsel.
>
> The trial judge testified that the jury instructions setting forth the
> elements of the charged offenses were not read in open court, but were
> provided in written form to the jurors. The now-retired trial judge testified
> that he used this procedure in every criminal trial that he presided over
> during his 18 years on the bench. According to the trial judge, a clerk
> typed up the elements for each offense, using the Criminal Jury
> Instructions. In preparation for the hearing, the trial judge testified that he
> called the clerk who prepared the instructions for him for the last 15 or 16
> years of his career and asked her to retrieve the list of elements used in
> [Petitioner's] trial. The judge testified that the instructions would have
> been kept in a separate office file that he maintained for every case that
> went to verdict or in a file that the clerk kept containing lists of the
> elements of criminal charges. The trial judge testified that he compared
> the list provided by the clerk to the charges contained on [Petitioner's] jury
> verdict form, and the list matched [Petitioner's] charges. To the best of the
> trial judge's recollection, the instructions provided to him were exactly the
> same as those that were provided to the jury at [Petitioner's] trial.
>
> The clerk, Ms. LaMarre, testified that the written instructions she
> provided to the trial judge were retrieved from her computer. Ms. LaMarre
> testified that when she received the request, she retrieved [Petitioner's]
> verdict form, which she had saved on her computer, then looked up the
> offenses listed on the verdict form from a folder stored on her computer
> entitled "elements of the offense."

*Becker*, 2009 WL 5194986, at *3 - *4.

Following this hearing, the Michigan Court of Appeals decided that the record was sufficiently settled to allow for evaluation of Petitioner's claims on appeal. The Court of Appeals noted that

> the trial judge and each counsel recalled reviewing written instructions concerning the elements of each offense. Defense counsel produced written instructions from his file that he had no reason to believe were not a copy of those that were provided to the jury. The trial judge, after requesting the written instructions that were used in [Petitioner's] case from a clerk at the court, compared them to the verdict form used in [Petitioner's] case and opined that they were the instructions he provided to the jury. The clerk testified that the instructions she provided to the trial judge were those that appeared on her computer and were used in [Petitioner's] case.

*Becker*, 2009 WL 5194986, at *4.

The state court's findings of fact are entitled to a presumption of correctness, because Petitioner has not rebutted them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). And, because the parties were virtually certain at the state evidentiary hearing that the jury instructions admitted as exhibits at the hearing were comparable to the instructions given to Petitioner's jury, Petitioner had a "record of sufficient completeness" to permit proper consideration of any claims about the jury instructions. He cannot show any prejudice as a result of not having the actual written instructions given to the jury or a transcript of the instructions because, at trial, he had no objections to the instructions handed to the jury and the Michigan Court of Appeals rejected his argument that the jury instructions on felony firearm were defective.[2]

---

[2] In state court, Petitioner argued that, if the Michigan Court of Appeals accepted the jury instructions that were entered as exhibits at the state evidentiary hearing as the actual instructions submitted to his jury, his conviction must be reversed because the jury instruction on felony firearm was flawed. Petitioner maintained that the jury instruction merely informed the jury of one element of the offense: that the defendant

Petitioner's constitutional rights to due process and equal protection of the law were not violated.

## IV.  CONCLUSION

Petitioner's first claim Is procedurally defaulted, and he waived review of the first part of his second claim regarding the trial judge's failure to read the elements of the offenses to the jury.  The state appellate court's decision on Petitioner's ineffective-assistance-of-counsel claim and on his third claim regarding the record, was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  The petition for a writ of habeas corpus therefore is denied.

## V.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a district or circuit judge must issue a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A

---

knowingly carried or possessed a firearm.  Petitioner claimed that the trial court should have instructed the jurors that, to find Petitioner guilty of felony firearm, they must also find that Petitioner committed an assault when he possessed the firearm.

Petitioner, however, conceded guilt on the felony firearm charge, and the Michigan Court of Appeals determined that the alleged error did not require reversal of Petitioner's conviction.  The Court of Appeals stated that, although the instruction on felony firearm provided to the jury differed from the standard criminal jury instruction,

it would be impossible for this Court to assign error when the missing portion of the standard criminal jury instruction involved the jury's obligation to find that the defendant committed or attempted to commit the underlying felony and, in the instant matter, the jury was advised of the elements of the underlying felony and found defendant guilty of the underlying felony.

*Becker*, 2009 WL 5194986, at *5.

20

certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. at 484.

Reasonable jurists would not find it debatable whether the Court's procedural rulings were correct. Nor would reasonable jurists conclude that Petitioner has stated a valid claim of the denial of a constitutional right. The Court, therefore, declines to grant a certificate of appealability on Petitioner's first claim (judicial bias) and on the first part of Petitioner's second claim (failure to read all the jury instructions to the jury).

Reasonable jurists also would not find the Court's assessment of the second part of Petitioner's second claim (trial counsel's alleged ineffectiveness) or Petitioner's third claim (lack of a reviewable record) debatable or wrong. The Court declines to grant a

21

certificate of appealability on those claims as well.  Nevertheless, Petitioner may

proceed *in forma pauperis* on appeal if he chooses to appeal this decision.


S/Victoria A. Roberts

Victoria A. Roberts

United States District Judge


Dated:  November 25, 2013


| The undersigned certifies that a copy of this document was served on the attorneys of record and Robert Becker by electronic means or U.S. Mail on November 25, 2013. |
| :--- |
| S/Linda Vertriest |
| Deputy Clerk |

22